[901 NE2d 192, 872 NYS2d 701]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JEAN YVES JEAN-BAPTISTE, Respondent.

Argued October 21, 2008; decided November 25, 2008

## POINTS OF COUNSEL

*Charles J. Hynes, District Attorney,* Brooklyn (*Ruth E. Ross* and *Leonard Joblove* of counsel), for appellant. The evidence adduced at defendant's trial was legally sufficient to support his conviction of depraved indifference murder. (*Policano v Herbert,* 7 NY3d 588; *People v Register,* 60 NY2d 270, 466 US 953; *People v Sanchez,* 98 NY2d 373; *People v Hafeez,* 100 NY2d 253; *People v Gonzalez,* 1 NY3d 464; *People v Payne,* 3 NY3d 266; *People v Suarez,* 6 NY3d 202; *People v Feingold,* 7 NY3d 288; *People v Favor,* 82 NY2d 254; *People v Mitchell,* 80 NY2d 519.)

*Lynn W.L. Fahey,* New York City, and *Joshua M. Levine* for respondent. The Appellate Division correctly determined that the evidence was legally insufficient to sustain respondent's depraved indifference murder conviction. (*People v Vasquez,* 88 NY2d 561; *People v Favor,* 82 NY2d 254; *People v Pepper,* 53 NY2d 213, 454 US 967, 1162; *Griffith v Kentucky,* 479 US 314; *Jones v United States,* 526 US 227; *In re Winship,* 397 US 358; *Schriro v Summerlin,* 542 US 348; *People v Getch,* 50 NY2d 456; *Sandstrom v Montana,* 442 US 510; *People v Hill,* 85 NY2d 256.)

## OPINION OF THE COURT

PIGOTT, J.

The issue raised by this appeal is whether the evidence introduced at trial was legally sufficient to establish defendant's guilt of depraved indifference murder. Because the Appellate Division properly applied the present standard for depraved

indifference murder, as set forth in *People v Feingold* (7 NY3d 288 [2006]), we conclude that it was not and affirm the Appellate Division's reduction of defendant's conviction to manslaughter in the second degree (Penal Law § 125.15 [1]).

On January 13, 2002, just after midnight, Michael Weekes, his fiancée and several other friends arrived at a party in a basement of a Brooklyn home. After approximately 20 minutes, Weekes and his fiancée walked past a man nicknamed "Backshot," whom they recognized from previous parties. Backshot either said something to Weekes, pushed him, or both. In response, Weekes turned, picked up a bottle from a table and hit Backshot once on the side of the head. Defendant, Backshot's cousin, then pulled out a handgun and, when he was within 12 to 18 inches of Weekes, pulled the trigger twice, but the gun did not fire. Defendant pulled the trigger a third time, discharging a round into Weekes's chest, killing him.

For these acts, defendant was charged with, among other things, two counts of murder in the second degree (Penal Law § 125.25 [1] [intentional murder], [2] [depraved indifference murder]). After a trial, a jury acquitted defendant of intentional murder, but was unable to reach a verdict on the remaining charges, including the charge of depraved indifference murder. The People thereafter filed a superseding indictment, adding manslaughter in the first degree (Penal Law § 125.20 [1]) to the charges contained in the prior indictment.

At the time of defendant's second trial, the elements of depraved indifference murder were defined by this Court's decision in *People v Register* (60 NY2d 270 [1983]). Under that definition, the only culpable mental state that the People were required to prove was recklessness with respect to the risk of death. The requirement that the defendant's acts be committed "[u]nder circumstances evincing a depraved indifference to human life" under *Register* did not refer to defendant's mental state, but instead referred to "the factual setting in which the risk creating conduct must occur" (*id.* at 276). Based on that instruction from the court, the jury found defendant guilty of depraved indifference murder.

Defendant appealed, contending that the evidence was legally insufficient to support his conviction. He argued that because the standard by which depraved indifference murder is measured had changed between the time of his conviction and the time of his appeal, from the objective standard as charged to the jury to a subjective standard as articulated by this Court in

*People v Feingold* (7 NY3d 288 [2006]), he was entitled to a dismissal of that charge. In *Feingold,* this Court overruled *Register* and held that "depraved indifference to human life is a culpable mental state" (*id.* at 294). Thus, under *Feingold,* it is not the circumstances under which the homicide occurred that determines whether defendant is guilty of depraved indifference murder, but rather defendant's mental state at the time the crime occurred. The Appellate Division, citing *Feingold,* agreed with the defendant and held that his conviction of depraved indifference murder could not stand because the evidence failed to establish the mental state required for depraved indifference to human life (44 AD3d 792 [2007]). It further concluded, however, that the evidence was legally sufficient to establish the lesser-included offense of manslaughter in the second degree (Penal Law § 125.15 [1]), and modified the judgment accordingly (44 AD3d at 793). A Judge of this Court granted leave to appeal (9 NY3d 1035 [2008]).

The primary issue before us is whether our decision in *Feingold* applies only prospectively to those defendants sentenced after that decision was rendered or whether that decision should apply to cases, such as the one now before us, which are pending on direct appeal. We hold that the standard as articulated in *Feingold* should apply to cases brought on direct appeal in which the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction.

"Under traditional common-law principles, cases on direct appeal are generally decided in accordance with the law as it exists at the time the appellate decision is made" (*People v Vasquez,* 88 NY2d 561, 573 [1996]). For instance, in *People v Hill* (85 NY2d 256 [1995]), we held that our decision in *People v Ryan* (82 NY2d 497 [1993])—concluding the term "knowingly" in Penal Law § 220.18 applies not only to the possession of the illicit substance itself but also to the weight of the substance—was applicable to cases pending on direct appeal at the time of the decision. We reasoned that "a conclusion that the *Ryan* case is not retroactive would result in a person's guilt even though one of the elements of the crime had not been established" (85 NY2d at 263). As such, a finding of guilt would "have rendered the proceeding fundamentally unfair and a violation of due process" (*id.* at 262).

Our reasoning in *Hill* is applicable to this case. Notably, a majority of the Appellate Division decisions already considering the issue have applied the prevailing law to direct appeals of

depraved indifference murder convictions (*see e.g. People v Dickerson*, 42 AD3d 228 [1st Dept 2007], *lv denied* 9 NY3d 960 [2007]; *People v Ziminski*, 34 AD3d 507 [2d Dept 2006]; *People v George*, 43 AD3d 560 [3d Dept 2007], *affd* 11 NY3d 848 [2008] [decided today]; *People v Garrison*, 39 AD3d 1138 [4th Dept 2007], *lv denied* 9 NY3d 844 [2007]).

The People rely on our decision in *Policano v Herbert* (7 NY3d 588 [2006]) in urging that this Court should not apply the existing depraved indifference murder law to defendants challenging their convictions on direct appeals. In *Policano*, we applied the three-part *Pepper* test when deciding whether our new depraved indifference standard applied retroactively to a case brought by *collateral* attack (*id.* at 603-604; *see People v Pepper*, 53 NY2d 213 [1981]). We held that the existing law should not be applied on collateral review to defendants whose convictions became final prior to our new interpretation of the law of depraved indifference murder. But that is not the case here, where defendant's conviction is still not final.*

There are important distinctions between defendants continuing to press specific sufficiency challenges during the appellate process, and those raising such challenges long after their convictions are final. Courts are not generous in applying new rules of law to collateral proceedings, given the "underlying considerations of finality" (*see People v Favor*, 82 NY2d 254, 261 n 2 [1993]). This Court has "drawn a sharp distinction between cases on direct appeal and cases in which '[t]he normal appellate process [has come] to an end' " (*id.*). In *Policano*, we recognized that to allow retroactive application of existing law to final convictions "would mean that every defendant to whose case it was relevant, no matter how remote in time and merit, would become [a] beneficiary" (*Pepper*, 53 NY2d at 222; *see Policano*, 7 NY3d at 604). We specifically noted our concern for congesting the courts with a multitude of motions by defendants with long-standing final convictions (*Policano*, 7 NY3d at 604). That concern is not present here. To exempt those cases that are presently on direct appeal from the application of this Court's recent jurisprudence would produce results contrary to our common-law tradition. Consequently, the Appellate Division here properly evaluated defendant's sufficiency challenge in

---

* Similarly, in *People v Reynolds* (25 NY2d 489 [1969]), this Court held that an evidentiary rule, pronounced after defendant's conviction, would not be retroactively applied to defendant's case. Reynolds' appeal, however, was on a motion to reargue to this Court four years after his appeal had become final.

light of our recent decisional law on depraved indifference murder.

The People maintain that, even if this Court retroactively applied *Feingold* to cases on direct appeal, the legal sufficiency of defendant's conviction should be measured by the court's charge given without exception. Here, however, the defendant made a specific motion to dismiss for legal insufficiency at trial, anticipating the change in the law brought by *Feingold*. The principle the People cite is inapplicable when, as in this case, defense counsel made a specific motion for a trial order of dismissal. Having made that motion, defense counsel did not additionally have to take an exception to the court's depraved indifference murder charge (*see Suria v Shiffman*, 67 NY2d 87, 96 [1986]).

Our holdings in *People v Dekle* (56 NY2d 835 [1982]) and *People v Sala* (95 NY2d 254, 260 [2000]) are not to the contrary. In *Dekle*, defendant moved for a trial order of dismissal on a robbery count because no "immediate" threat of physical force was possible when defendant was unable to open the folded knife. The court denied his motion and charged the jury that "immediate" had its ordinary meaning and no specific time was required to convict; defendant did not object to that definition. On appeal, defendant advanced a new theory, claiming that the trial court should have charged that "immediate" requires temporal and geographic proximity to the taking of the property. Unlike the present case, defendant in *Dekle* failed to preserve his newly advanced legal theory because it differed from the theory he advanced at trial. In *Sala* as well, the defendants advanced a different legal theory in this Court than the one objected to at trial.

In applying the *Feingold* standard to the case at bar, we conclude that the Appellate Division properly found that the evidence failed to establish that defendant acted with the requisite mental state of depraved indifference to human life. Further, the court correctly concluded that the evidence supported a conviction for manslaughter in the second degree (Penal Law § 125.15 [1]).

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order affirmed.